Dowd et al. v. White.

————◄•••►————

## W. F. DOWD et al. v. BENJAMIN C. WHITE.

1. WILL: SPECIFIC LEGATEE OF SLAVES, ETC., ENTITLED TO HIRE OR INTEREST FROM TESTATOR'S DEATH, ALTHOUGH PAYMENT OR DELIVERY POSTPONED BY WILL.—In cases of specific legacies of stock, or a specific money security, or slaves, the interest or hire belongs to the legatee from the testator's death, although, by the terms of the will, the principal is not to be paid or delivered until a future day.  See *Barrington* v. *Tristram*, 6 Ves. 245; 2 Roper. Leg. (3d edit.) 227; 2 Wms. Ex. 1021 (2 Am. Ed.).

2. SAME: BEQUEST BY IMPLICATION NOT FAVORED.—The courts will not raise a bequest by implication, unless such construction be necessary to effectuate the clear and plain intention of the testator.

3. SAME: CASE IN JUDGMENT.—The testator by his will provided as follows: I give and bequeath to my two grandsons, J. W. and G. W., two slaves, F. and J., but they are to remain in possession of W. (one of the executors) for the term of fifteen years, and at the expiration of that term, to be divided between

my two grandchildren, as the said W. shall think reasonable and just. The legatees were at the time orphans of tender age. By the residuary clause of his will, the testator directed "that all the rest and residue of his estate, not thereinbefore disposed of," should be sold for a division among the legatees therein named. *Held*, 1st, that by the terms of the will an absolute gift of the two slaves was made to his grandsons; 2d, that there was nothing in the circumstances which indicated an intention that W. should have any beneficial interest in the slaves during the time which they were to remain in his possession, or that the profits thereof for that period should go into the residuum of the estate; and 3d, that; therefore, the legatees were entitled to the hire of the slaves from the death of the testator.

In error from the Chancery Court of Monroe county. Hon. William Cothran, chancellor.

In September, 1840, William Wall died, having first made a will, by which he appointed his son, Z. E. Wall, and his step-son, Benjamin C. White, his executors, who, soon after the testator's death, procured the probate of the will, and qualified as executors.

By the third clause of his will, he gave a plantation and slaves to his grandchildren (the children of Z. E. Wall), with directions that the plantation and slaves should be worked and managed under the control and direction of his executors, and the profits arising therefrom applied to the support and education of the legatees, for the term of fifteen years, at the expiration of which time, the property and the "profits that may be left after" educating and supporting his said grandchildren, was to be equally divided amongst them.

By the fourth clause, he made a bequest of other land and negroes to certain other grandchildren, with directions that the property "should be under the management of Benjamin C. White for the term of fifteen years," when it was, together with "the profits" arising therefrom, to be equally divided among the said legatees.

The fifth clause, being the one under which complainant claimed title, is as follows:—

"I give and bequeath to my two grandsons, John W. Wall and George W. Wall, children of my deceased son, George W. Wall, two negro boys, Frank and July, but they shall remain in possession of Benjamin C. White for the term of fifteen years, and at the expiration of that time to be equally divided between my two grand-

children, as the said Benjamin C. White shall think reasonable and just."

By the seventh clause, he gave a negro girl to a granddaughter, with directions for White to have possession, similar to those contained in the fifth clause.

By the last clause of his will, the testator directed that "all the rest and residue of my (his) estate, not hereinbefore disposed of, shall (should) be sold, and the proceeds, after paying my (his) debts," to be equally divided among certain of his grandchildren therein named.

The negro boys, Frank and July, bequeathed to George W. and John W. Wall, were respectively of the ages twelve and fourteen years, at the time of the testator's death, and the said legatees are described in the bill as " infants of tender years."

White retained the possession of the slaves for the term of fifteen years, and then delivered them to the legatees, as directed by the will, but he refused to account or pay hire.

John W. Wall having arrived at full age, assigned his interest in the claim for hire to W. F. Dowd, and this bill was filed by said John W. and Dowd, his assignee, and by George W. Wall, and it was to recover from White the sum of $4000, for the hire of the negroes during the fifteen years they were in his possession.

The defendant demurred to the bill for want of equity on its face, and his demurrer was sustained, and the bill dismissed. Thereupon the complainants sued out this writ of error.

*Dowd* and *Wallace*, for plaintiffs in error.

There lies at the foundation of this investigation, a fact which is indisputable, and settles the rights of these parties.  The legacy is specific and not general.

A specific legacy is considered as separated from the general estate, and appropriated to the legatee.  It is severed from the bulk of the estate, and becomes the special property of the legatee, and to the property attaches its produce.  It vests on the death of the testator, and its income is demandable from that time.  2 Roper on Legacies, 227 ; Williams on Executors, 1021.

A specific legacy of stock will convey with it the dividends due from the death of the testator, although the enjoyment or possession

Dowd et al. *v.* White.

of the stock is postponed for many years. 6 Vesey, 345; *Chaworth* v. *Hooper*, 1 Brown's Chancery R. 82.

The words "I give," will pass the title to the devisee the moment of the testator's death. The property then becomes divested out of the testator and vested in his devisee. 1 Brown's Chancery R. 82.

The postponement of the possession is not inconsistent with an absolute property, nor is it inconsistent with the right to the profits; as a general rule they follow the property. *Graybill* v. *Butts & Warren*, 4 Georgia R. 534, 535. Whoever is entitled to the specific property or fund, is entitled to its increase as an adjunct. *Sullivan and others* v. *Winthrop et al.*, 1 Sumner R. 12.

The very question under consideration was determined by the Supreme Court of Georgia, in accordance with the authorities above quoted. In *Graybill et al.* v. *Warren*, 4 Georgia R. 528, the precise language of the clause in dispute was as follows:—

"I give to John T. Warren, son of Jesse Warren, deceased, one negro boy named Mat, which negro is not to go into his possession until he arrives at full age, twenty-one." It was urged with much force and ingenuity that the legatee was not entitled to the hire of the negro boy Mat until he became of lawful age. Judge Nesbit, after a careful review of all the English and American cases, reached a different conclusion, and declared that the legacy was specific, and the grandson entitled to the hire of the slave from the death of the testator.

In the case of *Christian* v. *Christian*, 3 Porter's R. 350, the precise question in this record came before the Supreme Court of Alabama. The clause of the will in dispute read thus:—

"I give to my grandson, John W. Christian, an equal dividend of the slaves with the following named children (naming them), to be equally divided when James A. Christian arrives at the age of twenty-one years of age."

Here the negroes were to be divided, and nothing was said of the hire. The only conceivable difference is, that in *Christian* v. *Christian* the enjoyment of the property was postponed until the legatee became twenty-one years of age, and by the will of Wm. Wall the possession was deferred for the space of sixteen years.

The learned chief justice says, "The bequest in this case is what the law denominates a legacy of quantity in the nature of a specific

legacy. It is severed from the bulk of the estate, by the operation of the will, from the moment of the testator's death, and amounts to a specific appropriation of that much of the property, with all its increase, hire, and emoluments from that period. It is unnecessary to give a long list of authorities. They are referred to in the cases already cited, and I will only add *Gregg* v. *Bethea*, 6 Porter Ala. R. 20, 21; *Moss* v. *McCullough*, 6 Ib. 521; *Buller* v. *Freeman*, 3 Atkins R. 58; 3 Ib. 716; Wood on Legacies (top page 158, and authorities cited); *Jones* v. *Wood*, 10 Yerger, 168; 2 Roper on Legacies, 188.

But it is argued with much apparent earnestness, that it abundantly appears from the whole will that the testator intended to give the use of two of his most valuable negroes for fifteen years to a stranger in blood, thereby cutting off the objects of his bounty and those closely allied to him by the ties of blood. Various clauses of the will are cited in support of this position. There is one unanswerable argument to all this, given by the master of the rolls in *Jones* v. *Colbeck*, 8 Vesey, 40, 42, cited and confirmed in *Christian* v. *Christian*,—a positive bequest cannot be controlled by inference and argument from other parts of the will.

Again, I take issue with the counsel. It is manifest from the whole will, that the grandfather did not intend to cut off his grandsons, and confer so large a sum on his executor, B. C. White. The fact that B. C. White was the stepson of Wall is mainly relied on. To this it may with justice be replied, that the feud between the stepson and stepfather is older than the customs of England's realm.

The argument of counsel, that we seek to add words to the will not used by the testator, is equally unfortunate. They insist that the testator did not say, "I give to my two grandsons two negro boys," &c. But they seek to put these words in his mouth, "I give to my executor, B. C. White, the two slaves, Frank and July, for the term of fifteen years, remainder to my two grandsons, in fee."

The arguments or inferences made by counsel from other parts of the will cannot avail them. The following propositions are undeniable and conclusive:—

1. The gift is absolute, and the possession alone is postponed. The complainants were minors, and incapable of taking care of the

negroes. If the testator had said, "I give the negroes to my grandsons," and appoint White their guardian, the legal effect would have been precisely the same.

2. The presumption is that the testator intended to dispose of his whole estate. The residuary clause provides for a sale of all the rest and residue of his estate, &c. Of course the hire of the two negroes was disposed of,—to whom ?

3. Not to B. C. White, the executor; because, he makes him a separate specific legacy of " my riding man." Why say nothing about giving an estate for years in the negroes ?

4. Whenever the testator makes a gift of land, negroes, plantation, stock, &c., he provides that his executor, White, shall manage and control the property, and appropriate the proceeds or income of the plantations and slaves to the minor legatees. It is a reasonable inference that the testator had made larger advances to some of his children than others, before his death. He gives a negro girl, Juliet, to his granddaughter, but possession is retained fifteen years in the hands of White. When he gives slaves alone, he makes no provision for the expenditure of the hire, &c. It is an absolute gift of the whole. But when he gives land and negroes in other clauses of the will, he directed the appropriation of the income to the support and education of the legatees, simply because he believed in the one case a necessity might exist, and in the other none.

5. The contest is between the executor and the legatees of the full blood, and the executor is a stranger in blood. The constant inclination of the court is, to favor the heir-at-law. 3 Wilson, 13; 3 Atkins R. 806.

*George S.* and *W. S. Yerger, Jr.*, on same side.

The first question presented for consideration is, whether the fifth clause of the will confers an absolute property upon the grandchildren of the testator, viz., John W. and George W. Wall; and whether they are entitled to claim the hire for the two negroes from the date of testator's death ?

In cases of specific legacies, the property granted and bequeathed becomes absolutely vested in the legatee, although by the terms of the will, the enjoyment of the principal may be postponed, and the legatee, having the absolute estate, is entitled to the increase,

profits, interest, or hire, arising out of the property from the date of the testator's death.

A specific legacy is regarded as separated from the bulk of the testator's property, by the operation of the will, from the death of the testator, and is specifically appropriated for the benefit of the legatee from that period, together with all the emoluments issuing therefrom. 2 Roper on Legacies, ch. 20, 1288.

In *Barrington* v. *Tristram*, 6 Vesey, 345, £5000 three per cts. were given in trust for the children of Mrs. Tristram. Lord Eldon said : " This being a specific legacy of stock, the dividends are due for maintenance from the death." See also 1 Brown Ch. R. 82 ; 4 Georgia, 534, 535 ; 1 Sumner, 12 ; and other authorities cited in the brief of Dowd and Houghton.

But it is contended by the terms of this clause, that Benjamin C. White was not made a mere trustee for the grandchildren, but was himself beneficially entitled to the term for fifteen years. But the words of this clause do not justify the conclusion. The testator has said in direct terms : " I give and bequeath," &c. This is sufficient to pass the absolute property, unless there are qualifying words in the other parts of the clause. But counsel contend that the words in the latter part of this clause do qualify and restrain the absolute disposition expressed above, viz. : " but they shall remain in possession of Benjamin C. White for the term of fifteen years." These words, however, clearly cannot be permitted to have such effect and operation, particularly in the case of minors. They raise a mere trust in White, and are entirely consistent with the previous words, importing an absolute gift to the grandchildren.

The case in 4 Georgia is analogous, and directly decides the precise point.

It is clear, then, from an examination of this clause by itself, that the words import an absolute gift in the grandchildren.

But it is said that other parts of the will show that it was the intention of the testator to give to the defendant in error, White, an estate for years in the slaves, with remainder over.

No clause, however, can be found which expressly bequeaths to him such an estate ; so that his claim, if supported at all, must be supported by implication alone. But "legacies, by implication, are not to be supported, unless the testator's intention is clear, so that

no other reasonable inference can be made." *Grant* v. *Hapgard*, 13 Pick. 164.

Cruise, in his Digest, vol. 6, p. 181, tit. 38, Devise, ch. 10, sect. 18, says: "The courts have, in some instances, allowed of a devise by implication, where it has been very apparent, in order to support and effectuate the intention of the testator; but, in cases of this kind, the implication must be a necessary, not a possible or probable one."

So "an implication may be rebutted by a contrary implication equally strong." *Rathbone* v. *Dyckman et al.*, 3 Paige, 9.

Again, courts are not permitted to give effect to the will of a testator contrary to the plain and obvious import of the terms used by him, upon a mere conjecture as to his intention. *Manigault* v. *Deas*, 1 Bailey Eq. 298.

It is a rule of construction, that an implication is admissible only in the absence of, and not to control, an express provision. 2 Powell on Devises, 7.

In support of this legacy in favor of the defendant, White, it is argued that he was the "stepson" of the testator; that he was appointed one of the executors; that he was appointed, by the will, a manager of the other property mentioned in the will; that he was made an agent for certain negroes set free; that he was intrusted with the estate of the above-mentioned children, until they should come to years of discretion, &c. That hire is mentioned in other clauses, and not in this. These considerations, when properly tested, afford faint criteria to ascertain the testator's design as endeavored to be shown.

In the first place it would seem strange that the testator, had it been his determination to give an estate for years to defendant, should make use of words so unsuited to express his intention, viz., "shall remain in possession for fifteen years." The ordinary signification of these words does not import an intention to pass a beneficial interest; a person of ordinary comprehension would certainly notice their unfitness to carry into effect such an intention, and the lawyer who drew up the will, which bears upon its face evidence of care and particularity in this respect, surely would not employ an expression of this nature to convey the idea as suggested by counsel.

Again, the fact that the defendant was appointed to take charge

of and manage the property comprehended under the other specific legacies mentioned in the will, is insisted upon as a pertinent fact in favor of the legacy by implication to defendant.

But this fact, if it has any influence at all, is but a frail dependence upon which the defendant rests his claim. If it proves anything, it would prove in the first place that it was the general intention of the testator to put all his property specifically bequeathed under defendant's management and control; and a very important item to be noticed in this connection is, that the property specifically bequeathed to the grandsons above mentioned, was to be apportioned or divided at the expiration of the period of fifteen years from testator's death, as was directed in the cases of the other specific legacies to his other grandchildren, which shows a unity of design on the part of the testator in reference to the subject-matter of his bounty.

But again, in this connection, the fact that defendant was appointed to control and manage all the property embraced in the will, is not a circumstance in favor of defendant; for, inasmuch as a large portion of the property was directed to be managed by him for the term of fifteen years, the services and charges of defendant in discharge of this trust for so great a length of time, would amply compensate him for any claims he had upon the bounty of testator as his stepson.

But the point mostly relied upon to aid in their construction of the will, is that defendant was the stepson of the testator, and he doubtless bequeathed the two slaves to him for the term of fifteen years, in consideration of his natural love and affection.

This point, upon examination, will be found without force. It appears by the evidence presented by the will itself, that the testator had living at the time of his death, another son, but not a stepson, viz., Zachariah E. Wall; and it is natural and reasonable to suppose that if he had designed to leave any testimonial of his favor to his stepson, that he would have left a corresponding testimonial to the same extent, to his own son; a son upon whom, the face of the will testifies, he reposed great confidence, and for whom he shared a great regard, for he is made by the will a co-executor with the defendant, and a co-manager with defendant in one of the estates specifically devised. But it may be insisted here, that it is to

be inferred that, inasmuch as said Zachariah E. Wall was not appointed to take charge of the other estates devised, in conjunction with defendant, that in so excluding him, the testator did not intend in these instances, to confer upon White a mere trust for fifteen years, but an estate for that period; but it will be observed on the other hand, that in one of the clauses directing the defendant alone to manage and control the estate for the term of years, the same language is used in another clause which provides that defendant and Zachariah E. Wall jointly manage the property bequeathed; so that any inference from this argument is rebutted.

Again, it is contended that the grandchildren, George W. and John W. Wall, were minors under ages of discretion at the time of the death of the testator, and that for this reason the testator thought proper to give a term for years to defendant, with remainder over. But we deduce a different conclusion from this fact. We think that inasmuch as the grandchildren above mentioned were under ages of discretion, that it was the design of the testator to appoint a trustee to take charge of the estate until the grandchildren were capable of taking charge themselves. Certainly this was his design, as evidenced from other clauses of the will.

Upon the whole, then, we think there is abundant evidence upon the face of the will itself, which indicates that it was the object of testator to provide alone for the children of his sons, instead of the sons themselves, for in every instance of a specific legacy therein bequeathed, it will be observed that the grandchildren's interests were alone uppermost in the mind of the testator when he made his will.

Does it appear, then, from all the above considerations, that the "intention is clear" on the part of the testator to give a legacy by implication to defendant, "so that no other reasonable inference can be made?" 13 Pickering, before cited.

Or that the intention to do so is "very apparent?" that the "implication" is a "necessary," not a probable or possible one? Cruise Dig. before cited.

Or does it not appear that the "implication has been rebutted by an implication equally strong?" 3 Paige, before cited.

Or does it appear right, that an express legacy to the grandchildren should be overruled by a claim based alone upon an implication? 2 Powell on Devises, before cited.

We think not.

And, generally, it would be a singular rule of construction to say, that because the testator in one clause omitted to mention that the hire of the slaves should be accounted for at the expiration of fifteen years, and happened to mention it in other clauses, when it was entirely unnecessary, that, therefore, it was designed by the one clause to confer an estate by implication.

It would be equivalent to saying, that because he said all that was necessary and legally required in the one case, yet that because he said more than was legally required in other cases, that therefore he should have said more than is necessary or legally required in all the cases.

It is presumed that when a person makes his will, he makes it with reference to the law, and hence it is a well-known legal maxim, " The expression of a clause which the law implies works nothing." Harrison Dig. (Wills) 6668 ; Broom's Legal Maxims, 286 ; 2 Institutes, 365 ; 4 Rep. 73 ; 5 Ib. 11.

Thus, if land be let to two persons for the term of their lives, this creates a joint tenancy ; and if the words " and the survivors of them" is added, they will be considered as mere surplusage, because by law the term would go to the survivor anyhow. Coke's Litt. 191.

Again, as to estates by implication, in 3 Paige, 9, the following clause occurred in a will : " And after the death of my wife, in case I should have no more children, I give, devise, and bequeath to my daughter, E. L., my said dwelling-house and farm, together with all the rest and residue of my estate." *Held,* that the wife did not take a life estate by implication.

An express and positive devise is not to be controlled by subsequent ambiguous words (8 Bligh. N. S. 88), or by inference and argument from the other parts of the will. 1 Vesey, Jr. 268 ; 8 Vesey, 42 ; Cowper, 99 ; Chilton on Probates, 119.

" Legacies are to be considered as vested, unless the intention of the testator is manifestly otherwise, and courts will not conjecture in favor of an intention against this rule." 2 Ashmead, 203 ; 2 Roper on Leg. 377 ; 11 Vesey, 498 ; 6 Ib. 159, 529 ; 8 English Equity Cases Cond. 438.

We, therefore, think the judgment should be reversed.

*Sale* and *Phelan*, for defendant in error.

The construction of a will, upon its mere face, is the single question presented in this record.

One William Wall made his will, and appointed the defendant in error one of his executors. By virtue of a provision in said will, the defendant took possession of, and retained for a certain time, "two negro boys," bequeathed to the testator's two grandsons, viz., George W. Wall, one of the plaintiffs in this case, and John W. Wall, of whom the other complainant is assignee. After the expiration of the time specified in the will during which White should retain possession of said slaves, he delivered them to the said legatees, as directed by the will.

It is now contended that White is liable to the said legatees for the hire of the said slaves for the time they were so in his possession, and this bill was filed against him to make him account for the same.

White demurred to the bill, because he was not bound so to account by virtue of said will. Because there was no equity in the bill, admitting the construction contended for to be right.

The following is the clause of the will for the court to construe :—

"I give and bequeath to my two grandsons, John W. Wall and George W. Wall, children of my deceased son, George W. Wall, two negro boys, Frank and July; but they shall remain in possession of Benjamin C. White for the term of fifteen years, and at the expiration of that time, to be divided between my two said grandchildren, as the said Benjamin C. White shall think reasonable and just."

If this clause constituted the entire will, without other means than its simple words, to ascertain the intention, it would be impossible to give it the interpretation contended for by the complainants.

It says the negroes "shall" remain in the possession of White. The testator's mind is definite, and his word imperative, as to that fact. Can it be imagined, that the testator meant to force the possession of two small negroes on White,—compel him to retain them for fifteen years,—most of the time, perhaps, years of mere childhood,—and, at the same time, require him to pay hire for them for that time? Is there a sane man in the world who could think of such a thing? Is there a sane man who could think, for an instant,

of accepting such a proposition? But, admitting such a thing could be thought of, and designed, is it probable that that design would have been conveyed in language so entirely insufficient to impart the intention? And is it not still more improbable, that he would have used words antagonistic to such an idea? But the indefiniteness and unlimited discretion given to White, in regard to the division of the slaves, at the expiration of the term, during which he was required to retain them, shows a trust and confidence in White, sufficient of itself to show that the testator's desire was to get the negroes in White's possession for some cause distinct from and inconsistent with an intention to make him pay hire for his said possession. The said slaves were to be divided at the expiration of the term, as he "shall think reasonable and just." It appears that White was the testator's "stepson;" that he appointed him his executor; that he gave him the "management" and "direction" of all the other property bequeathed or devised by his will, and made him "agent" for certain negroes set "free," and gave him the "management and charge of them, and what they may possess." White was evidently a man and a relative in whom he confided, and to whose possession he desired to intrust the negro boys, as most for the benefit of his grandsons,—then mere children, as it appears,—until they should reach years of discretion.

The specification of what shall be divided, at the expiration of the term, is conclusive upon the point. The enumeration of one or more things is exclusive of all else. The testator says: "They [the negroes] shall be divided," &c. By what rule of construction is an interlineation to be forced into this clause, by which it is to read, "they [and their hire for that term] are to be divided?" &c. Was their hire, then, also, to be divided, as White should "think reasonable and just?" Of course. Then he could give one a cent and the other nothing. But the entire absence of even the remotest allusion to any liability of White for hire (to say nothing of the language antagonistic to such a supposed intention, and its repugnancy to the general structure and aim of the bequest) would be sufficient to defeat this bill, were there no context or other clauses to aid in the interpretation of the clause in controversy. But such is not the case. There are other clauses, and of that character which bear directly upon the clause in dispute. The will

contains similar bequests to that under consideration, and in which it was necessary that different language should be employed, if the intention sought to be engrafted on this clause was really designed in the others; and different language was, consequently, so employed. Again, the very subject involved in this controversy, viz., the profits of the property, came up in the mind of the testator, and was fully provided for.

The third clause gives to his son Zachariah Wall, certain land and negroes, "for the benefit of his grandchildren," the children of his said son, which are to be "under the direction of his said son,. and Benjamin C. White, for the term of fifteen years; and the profits arising therefrom to be employed in schooling," &c. . . . . . "and at the expiration of that term" the property conveyed "and any profits that may be left" . . . "are to be equally divided," &c.

Again, he next gives to certain other grandchildren, certain lands and slaves, "to be under the direction and management of B. C. White, for the term of fifteen years; and, at the expiration of that time, the said land and negroes, and the profits arising from the said land, and work of the said negroes, to be equally divided between my two grandchildren."

Now here are two clauses, containing bequests identical in character to that under consideration, in which provision is most critically made for the division of the profits, &c., and in which terms most plain and appropriate are employed to convey the intention of the testator in regard to the property, its control, its profits, and the division of both. It does not say the property "shall remain in possession of White," but "under his management and direction." It is not silent as to profits, but provides for their disbursement, during the term; and the division of "any that may be left." It does not say "they" shall be divided, "but the negroes and their work." It does not say "that they shall be divided as White may think reasonable and just," but that negroes and profits shall be equally divided.

And now immediately comes the clause in controversy. It also provides for grandchildren; it also bequeaths negroes; it also provides for the disposition of those negroes; it designates the term of fifteen years; and it also provides for the division of the negroes at the expiration of that time. And now, in the absence of all

Dowd et al. *v.* White.

other objections, is it possible that the testator could have accidentally omitted the slightest reference to profits? When his mind was at that instant directed to and engaged with the very subject itself, in the identical connection where it is now said it ought to appear, is it possible, as an abstract supposition, that it was omitted except from intuition? It could not be so supposed even had the clause said, "that the said slaves were to be under the management and direction of White." But it does not so say. The language is changed, and the power and position of White is also changed, and that change is consistent with our supposed change of mind. If under his "mere management," he could have hired them out, or made such other disposition of them, as he might have thought proper. But when it was said that they "shall remain in his possession," the supposition that he did not intend White should pay hire is not only reasonable, but imperative. But admitting that the testator had omitted to make mention of the hire of the boys, during the fifteen years they were to be withheld from the legatees, is it not most improbable that he should not have mentioned it when he came to speak of what was to be divided to them at the expiration of the term? And yet he does so again omit it.

But the critical presence of such words in the preceding clauses of the will would be sufficient to defeat the interpretation sought in this case by complainants, if no other clause followed the one in controversy. But such is not the fact. A clause almost immediately follows, identical in character with all the preceding, and almost identical in language with the clause under discussion; and the same absence in this bequest of any allusion to profits must torture the most partial mind to the conclusion that such omission could not have been accidental, but must have been intentional. That clause gives to another granddaughter a negro girl, and says, "she shall remain in possession of B. C. White for the term of fifteen years, and at the end of that time be delivered to said granddaughter."

It does seem to us, that to combat the supposition that the testator intended White should pay hire for these negroes, and that that intention is proved and appears on the face of the will, is battling the air.

We decline further argument.

HANDY, J., delivered the opinion of the court.

The plaintiffs in error filed this bill in the Chancery Court of Monroe county, to recover of the defendant hire for two slaves specifically bequeathed by the last will and testament of William Wall, deceased, to two of his grandchildren, who are alleged to have been infants and orphans at the death of the testator.

The clause of the will on which the bill is founded is as follows: " I give and bequeath to my two grandsons, John W. Wall and George W. Wall, two negro boys, Frank and July; but they shall remain in possession of Benjamin C. White for the term of fifteen years, and at the expiration of that term, to be divided between my two grandchildren, as the said Benjamin C. White shall think reasonable and just."

White was one of the executors named in the will.

After the expiration of the time mentioned, the slaves were delivered over by White to the legatees; but he refused to account for any hire for them; and this bill was filed for the purpose of recovering the hire.

A demurrer was filed by the defendant, which was sustained, and the bill dismissed.

The ground upon which the bill was dismissed, and which is insisted upon here in support of the decree, is, that by the terms of the will the defendant was entitled in his own right to the use and benefit of the slaves until the expiration of the time specified, and, consequently, was not accountable for their hire during that period.

It is not a matter of controversy that the slaves were to remain in the possession of the defendant for fifteen years; but the question is, was he entitled in his own right to their use in the meantime?

The bequest of the slaves was a specific legacy to the testator's grandchildren, and in its terms it was a full and absolute bequest to them. And the rule is, in cases of specific legacies, that the interest or dividends, if it be stock or a specific money security, belong to the legatee from the death of the testator, although the principal is not to be paid, by the terms of the will, until a future day. *Barrington* v. *Tristram*, 6 Ves. 345; 2 Roper Leg. (3d edit.) 227; 2 Williams Exors. (2d Amer. edit.) 1021. The same principle is applicable to a specific legacy of slaves.

Is the absolute bequest to the grandchildren, in the clause of the
will under consideration, limited or abridged by the words which
follow it, providing that the slaves shall remain in White's posses-
sion until the time appointed for their division and delivery to the
legatees ?   We think clearly not.

It appears that White was the stepson of the testator, and one
of the executors appointed by the will, and that these legatees were
infants of tender years.   They were, of course, incapable of taking
charge of the slaves; and it would seem that the testator preferred
to leave them in charge of his executor, in whom he had confidence,
rather than to leave them without directions as to the persons into
whose charge they might go.   There is nothing in the circumstances
which tends to render it at all probable that the testator intended
to deprive the legatees of the entire benefit of the legacy, but it is
rather to be presumed that he intended that they should have the
full benefit of it for their support during their minority, and until
the time which he had appointed for its delivery to them.   Such a
disposition is just and natural, and must be presumed to have been
intended, unless a contrary intention clearly appears.

The words used in relation to the possession of White, do not
necessarily create any interest in White in his own right, nor does
it appear that the hire of the slaves during the time they were to
remain in his possession was intended to go into the residuum of
the estate ; for the residuary clause directs the sale of all the rest
of his estate which had not been disposed of.   The absolute estate
at first given to the grandchildren, therefore, cannot be limited or
abridged except by holding that an interest was bequeathed to
White by implication ; and in order to sustain such a construction,
the intention of the testator must be clear, and such a construction
must be necessary in order to effectuate the plain intention of the
testator.   6 Cruise Dig. 177, § 18.   Here no purpose is indicated
in the will which could require that White should take to his own
use the hire of the slaves during the time they were to remain in
his possession.   On the contrary, the absolute estate passed to the
legatees on the testator's death, the possession being postponed
until they should reach maturer years.   There is nothing which
shows that the possession which was to remain with him was for his
own benefit.   But a plain reason is apparent why the slaves should

remain in his possession for the legatees; and that is, that they were infants of tender years and incapable of managing them; he was a trustworthy friend: and the testator chose to leave the slaves so that they might be used to the best advantage for the benefit of the legatees by a competent and reliable friend, rather than to go into the hands of unknown persons as their guardians.

We think it clear, therefore, that White took no individual interest in the slaves under the will, and that his possession was as trustee for the legatees, and consequently that he is accountable for hire.

The decree is reversed, the demurrer overruled, and the defendant required to answer in sixty days; and the cause is remanded for further proceedings.